[Crim. No. 25047. Second Dist., Div. Two. Oct. 31, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLY CLARK REAVES, Defendant and Appellant.

## COUNSEL

Patricia A. Shanahan, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Jack T. Kerry, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COMPTON, J.**—Defendant was found guilty by a jury of the crime of first degree robbery. The jury also found that at the time of the commission of the offense he was armed with a deadly weapon and that he used a firearm. The trial court at the time of sentencing found sections 3024 and 12022 of the Penal Code inapplicable but did find that section 12022.5 (the use of a firearm) was applicable. Sentence was to state prison. Defendant appeals.

### DEFENDANT'S MOTION FOR A CONTINUANCE ON THE DAY OF TRIAL WAS PROPERLY DENIED

Defendant was arraigned on the information on August 30, 1973, and a public defender was appointed to represent him. A readiness conference was set for September 28, 1973, and trial was set for October 9, 1973. The readiness conference was held on the scheduled date. However, on

the date of trial the record reflects that the defendant moved to continue both the trial and the readiness conference for further investigation. Trial was thus continued to October 25. On that later date a similar motion by the defendant was granted and trial was continued to November 12, 1973. On November 12, on defendant's motion, trial was continued to December 5. Again on December 5, on defendant's motion, the matter was continued to January 16, 1974. On each of the above referenced dates, defendant was present with his counsel and the record reflects that he made no objection or complaint concerning the representation which he was receiving.

On the date set for trial defendant moved again for a continuance and this time announced that he wished to obtain private counsel. The trial court observed that both sides had previously announced ready for trial, that a number of continuances had previously been granted at defendant's request, and thus denied the motion for continuance. Trial commenced.

The defendant in asking for yet another continuance offered no reasons why he desired different counsel although he had ample opportunity to do so, nor did he indicate that he was financially able to hire private counsel.

Since the public defender was appointed for the defendant at his initial arraignment we presume that he at that time indicated a lack of ability to hire private counsel. If during the ensuing five months, during which defendant made numerous appearances in court, he had developed the ability to hire private counsel or had some reason for wishing to discharge his appointed counsel, it was incumbent upon him to do so and bring the matter to the attention of the trial court. On the face of this record the trial court was justified in assuming that defendant was, at all stages, properly represented by appointed counsel, and that defendant lacked the ability to hire private counsel. *People* v. *Marsden*, 2 Cal.3d 118 [84 Cal. Rptr. 156, 465 P.2d 44], is inapposite, since defendant was not prevented from articulating his reasons for desiring a change. In short, defendant's motion appears to have been nothing more than an attempt at delaying the trial only for the sake of delay.

A criminal defendant has a right to be represented by counsel of his own choosing. (*People* v. *Robinson*, 222 Cal.App.2d 602 [35 Cal.Rptr. 344]; *People* v. *Crovedi*, 65 Cal.2d 199 [53 Cal.Rptr. 284, 417 P.2d 868]; *People* v. *Terry*, 57 Cal.2d 538 [21 Cal.Rptr. 185, 370 P.2d 985].) Generally speaking defendant is entitled to a continuance to secure an attorney of his own choice. (*People* v. *Crovedi, supra; Chandler* v.

*Fretag,* 348 U.S. 3 [99 L.Ed. 4, 75 S.Ct. 1]; *People* v. *Byoune,* 65 Cal.2d 345 [54 Cal.Rptr. 749, 420 P.2d 221].)

On the other hand, the matter of the granting of a continuance is addressed to the sound discretion of the trial court when such continuance is sought for the purpose of obtaining counsel by one who is already represented by counsel. (Pen. Code, § 1050; *People* v. *Murphy,* 35 Cal.App. 3d 905 [111 Cal.Rptr. 295]; *People* v. *Delgado,* 32 Cal.App.3d 242 [108 Cal.Rptr. 399].) The question of whether the denial of a continuance is constitutionally an abuse of discretion must necessarily turn on the circumstances of each case. Needless to say, there is a limit to how often a defendant may continue his trial even on the basis that he desires to obtain different counsel. (*People* v. *Hagen,* 6 Cal.App.3d 35 [85 Cal.Rptr. 556].)

 It is our opinion that a trial court does not abuse its discretion when it refuses to grant such motion for a continuance which is made on the very day of trial, after the matter has been pending for five months and the defendant has previously and successfully obtained numerous continuances without indicating that there existed any reason to change attorneys.

### THE JURY WAS PROPERLY INSTRUCTED AS TO WHAT CONSTITUTES THE USE OF A FIREARM

 The trial court instructed the jury in the language of CALJIC No. 17.19 (1973 Rev.) which states in part that "The term 'used a firearm' includes not only an intentional discharge thereof but also the use thereof as an object with which to hit or strike or display in a menacing manner."

The defendant here contends that the court prejudicially erred when it failed to add to the instruction an admonition that by the term "used a firearm" the Legislature intended something more than a bare potential for use. (*People* v. *Chambers,* 7 Cal.3d 666 [102 Cal.Rptr. 776, 498 P.2d 1024]; *People* v. *Washington,* 17 Cal.App.3d 470 [94 Cal.Rptr. 882].)

The desire of the Legislature to prevent death and injury as a result of the involvement of firearms in the commission of crime is manifest from the various provisions for increased punishment for crimes where firearms are in some way involved. The underlying intent of the Legislature is to deter persons from creating a potential for death or injury resulting from the very presence of a firearm at the scene of a crime. Thus there is aggravated punishment for a person who is armed with a deadly weapon even though no use is made of the weapon. A person is armed with a

deadly weapon when he simply carries such weapon or has it available for use in either offense or defense.

Section 12022.5 is another facet of the legislative scheme. That statute aims at deterring the use of firearms in the commission of crime.

In interpreting the Legislature's intent in enacting section 12022.5 of the Penal Code, the Supreme Court in *People* v. *Chambers, supra,* at page 672, stated: "Although the use of a firearm connotes something more than a bare potential for use, [which is present when a defendant is "armed" with a firearm] there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies. . . . The obvious legislative intent to deter the use of firearms in the commission of the specified felonies requires that 'uses' be broadly construed."

CALJIC No. 17.19 adequately and correctly describes what is meant by the term "used" a firearm. It provides, of course, that the intentional firing of the gun is use of the firearm. The display of the gun in a menacing manner as a means of accomplishing a robbery or the employment of the gun to strike or "pistol whip" the victim is certainly "use" of the gun in the commonly accepted definition of that term. Because either such "use," i.e., the menacing display of or striking the victim with the gun carries the ever-dangerous potential of a discharge of the firearm, both such "uses" are properly included within the spirit and purpose of Penal Code section 12022.5. Thus by defining what constitutes "use" of a firearm, CALJIC No. 17.19 necessarily informs the jury that "use" is different than being "armed."

There was no error in the instruction and under the facts of this case the defendant could not have hoped for a different result even if more expansive instructions had been given. The defendant here displayed the firearm in a menacing manner when he at gun point forced the victim of the robbery to give up money that was in a cash register.

THERE WAS NO ERROR IN PERMITTING THE PROSECUTION TO
OFFER AS DEMONSTRATIVE EVIDENCE WEAPONS WHICH
WERE NOT CONNECTED WITH THE CASE

█ Apparently the gun actually used by the defendant was never recovered. The various witnesses to the robbery described the gun which was carried by the defendant. During the examination in chief of the prosecution witnesses the prosecutor introduced three guns which concededly were not connected with the defendant or the robbery. The guns

were shown to the witnesses for demonstrative purposes to permit the witnesses to testify how the gun used by the defendant compared to the weapons that were actually in court.

The trial court has broad discretionary powers to permit the use of demonstrative evidence. It is a practice of long-standing to permit witnesses in elaborating on their description of a physical item which is not actually present in court, to point out the similarity of things that are actually present in the courtroom. Such practice is proper. (Evid. Code, § 351; *People* v. *Cavanaugh,* 44 Cal.2d 252 [282 P.2d 53]; *People* v. *Ham,* 7 Cal.App.3d 768 [86 Cal.Rptr. 906].)

The judgment is affirmed.

Fleming, Acting P. J., and Beach, J., concurred.

A petition for a rehearing was denied November 19, 1974, and appellant's petition for a hearing by the Supreme Court was denied December 26, 1974.