[No. F014729. Fifth Dist. Aug. 31, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANKLIN J. SMITH et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the Statement of the Case, the Statement of Facts, and the Discussion, parts I, II.A., II.B., III.C., III.D., and IV.

**COUNSEL**

Estelle A. Schleicher, Peter J. Sailors, Robert Derham and James E. Mc-Cready under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Alison Elle Aleman, Harry Joseph Colombo and Margaret Garnand Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**DIBIASO, Acting P. J.**—Franklin J. Smith, Bonnie Lynn Field, Lawrence R. Ellis, and Terry Thomas Harris appeal from their convictions on an array of charges which arose out of a conspiracy involving the possession for sale and transportation of large amounts of methamphetamine.

STATEMENT OF THE CASE-DISCUSSION I.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *Instructional Error*

Various defendants claim an assortment of instructional errors. All such contentions are without merit.

A., B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

C. *CALJIC No. 2.90*

Smith and Harris maintain the trial court committed federal constitutional error by instructing the jury in the words of CALJIC No. 2.90 (5th ed. 1988 bound vol.). The court told the jury:

"Now a defendant in a criminal action is presumed to be innocent until the contrary is proved, and in the case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt.

"Reasonable doubt is defined, as follows: It is not a mere possible doubt because everything relating to human affairs and depending on moral evidence is open to some possible or imaginary doubt. It is that state of the

---

*See footnote, *ante*, page 196.

case, which after the entire comparison and consideration of all the evidence leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge."

According to Smith and Harris, the vice of this instruction lies in its use of the notion of "moral certainty" to explain the concept of proof "beyond a reasonable doubt." They argue: "[T]he term 'moral certainty' is unconstitutionally vague and permits a jury to vote for conviction based upon a standard of proof less than required under the Fourteenth Amendment."

CALJIC No. 2.90 is derived from Penal Code section 1096.[17] When the jury has been charged in the language of this statute, "no further instruction on the subject of the presumption of innocence or defining reasonable doubt need be given." (§ 1096a.)

Section 1096 has remained unchanged since 1927. Although both it and CALJIC No. 2.90 have been criticized (see, e.g., *People* v. *Brigham* (1979) 25 Cal.3d 283, 292 [157 Cal.Rptr. 905, 599 P.2d 100] (conc. opn. of Mosk, J.), at least one appellate court has rejected as "frivolous" the contention section 1096 is unduly vague or otherwise unconstitutional (*People* v. *Wade* (1971) 15 Cal.App.3d 16, 25 [92 Cal.Rptr. 750], cert. den. 405 U.S. 925 [30 L.Ed.2d 797, 92 S.Ct. 972]). More recently, the California Supreme Court has reaffirmed the instruction:

"While CALJIC No. 2.90 may be subject to criticism for its anachronistic language, it has for many years provided the benchmark for defining the standard of proof required for conviction in a criminal proceeding and is undoubtedly correct if properly understood. Defendant provides no persuasive reason to reexamine our determination in *Brigham, supra,* 25 Cal.3d 283, that it provides at present the best available definition of the standard of proof beyond a reasonable doubt." (*People* v. *Crandell* (1988) 46 Cal.3d 833, 881 [251 Cal.Rptr. 227, 760 P.2d 423].)

According to the Supreme Court, "the remedy for any perceived deficiency in [section 1096's] codification of the 'reasonable doubt' standard is

---

[17]All statutory references are to the Penal Code unless otherwise specified.

*Section 1096 provides:* "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal, but the effect of this presumption is only to place upon the state the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: 'It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they can not say they feel an abiding conviction, to a moral certainty, of the truth of the charge.' "

not judicial but legislative." (*People* v. *Adcox* (1988) 47 Cal.3d 207, 242 [253 Cal.Rptr. 55, 763 P.2d 906].)

Recognizing, as they must, the long history of judicial acceptance of section 1096 and its companion instruction, Smith and Harris now offer what they claim is new and conclusive authority for the proposition that CALJIC No. 2.90 is unconstitutional—the recent United States Supreme Court opinion in *Cage* v. *Louisiana* (1990) 498 U.S. 39 [112 L.Ed.2d 339, 111 S.Ct. 328].

■ In state criminal trials, the due process clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (*In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 90 S.Ct. 1068].) At issue in *Cage* v. *Louisiana* was whether Louisiana's reasonable doubt instruction complied with *Winship*. The instruction in question told the jury that reasonable doubt " 'must be such doubt as would give rise to a grave uncertainty' "; that it was not a " 'mere possible doubt,' " but " 'an actual substantial doubt' "; and that " '[w]hat is required is not an absolute or mathematical certainty, but a moral certainty.' " (*Cage* v. *Louisiana, supra*, 498 U.S. at p. 40 [112 L.Ed.2d at p. 342, 111 S.Ct. at p. 329], italics omitted.) In finding this instruction deficient, the United States Supreme Court stated:

"In construing the instruction, we consider how reasonable jurors could have understood the charge as a whole. [Citation.] The charge did at one point instruct that to convict, guilt must be found beyond a reasonable doubt; but it then equated a reasonable doubt with a 'grave uncertainty' and an 'actual substantial doubt,' and stated that what was required was a 'moral certainty' that the defendant was guilty. It is plain to us that the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to 'moral certainty,' rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." (*Cage, supra*, 498 U.S. at p. 41, fn. omitted [112 L.Ed.2d at p. 342, 111 S.Ct. at pp. 329-330].)

The California Supreme Court has already rejected the contention that *Cage* invalidates CALJIC No. 2.90. In *People* v. *Jennings* (1991) 53 Cal.3d 334 [279 Cal.Rptr. 780, 807 P.2d 1009], cert. den. __ U.S. __ [116 L.Ed.2d 462, 112 S.Ct. 443], the jury was given the standard pattern instruction

defining reasonable doubt. After an examination of the United States Supreme Court's reasoning in *Cage*, the state Supreme Court concluded that, unlike the Louisiana instruction, the California instruction did not transform "true reasonable doubt, as it has been traditionally defined, into a higher degree of doubt." (*Jennings, supra,* at p. 386.)

Harris asserts that *Jennings* does not apply because the opinion does not consider the words "moral certainty," but instead limits its analysis to the phrases "grave uncertainty" and "actual substantial doubt" contained in the Louisiana instruction found objectionable in *Cage*. This is nonsense. The court's references to *Cage* included every aspect of the Louisiana instruction, including the interrelationship of all three crucial phrases. (*People* v. *Jennings, supra,* 53 Cal.3d at p. 385.) If the California Supreme Court felt that CALJIC No. 2.90 did not pass the *Winship-Cage* test in any respect, it had every reason and opportunity to say so. We are bound to follow *Jennings.* (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Furthermore, the legal standard under which *Cage* evaluated the Louisiana instruction has since been disapproved. (*Estelle* v. *McGuire* (1991) 502 U.S. ___ [116 L.Ed.2d 385, 112 S.Ct. 475, 482, fn. 4].) The correct yardstick is no longer how reasonable jurors could have understood the charge as a whole. (See *Cage* v. *Louisiana, supra,* 498 U.S. at p. 41 [112 L.Ed.2d at p. 342, 111 S.Ct. at p. 329].) Rather, it is " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." (*Estelle* v. *McGuire, supra,* 502 U.S. at p. ___ [116 L.Ed.2d at p. 399, 112 S.Ct. at p. 482].)

The trial court did not err in charging the jury pursuant to CALJIC No. 2.90.

III. *Imposition of Section 12022 Enhancements*

A. *Introduction*

With respect to counts one, two, three, and seven, the jury found true, as to each defendant, the enhancement allegations based upon section 12022, subdivisions (a)(1) and (c). Defendants now raise various issues concerning these enhancements. We will ultimately decide that all subdivision (c) enhancements must be stricken as to all defendants, due to instructional error and a corresponding failure on the part of the jury to make the findings necessary to the imposition of the enhancements.

Section 12022 reads in pertinent part:

"(a)(1) Except as provided in subdivisions (c) and (d), any person who is armed with a firearm in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of one year, unless such arming is an element of the offense of which he or she was convicted. This additional term shall apply to any person who is a principal in the commission or attempted commission of a felony if one or more of the principals is armed with a firearm, whether or not such person is personally armed with a firearm.

" . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) Notwithstanding the enhancement set forth in subdivision (a), any person who is personally armed with a firearm in the commission or attempted commission of a violation of Section 11351, 11351.5, 11352, 11366.5, 11366.6, 11378, 11378.5, 11379, 11379.5, or 11379.6 of the Health and Safety Code, shall, upon conviction of that offense and in addition and consecutive to the punishment prescribed for the offense of which he or she has been convicted, be punished by an additional term of imprisonment in the state prison for three, four, or five years in the court's discretion. The court shall order the middle term unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its enhancement choice on the record at the time of the sentence.

"(d) Notwithstanding the enhancement set forth in subdivision (a), any person not personally armed with a firearm who, knowing that another principal is personally armed with a firearm, is a principal in the commission or attempted commission of an offense specified in subdivision (c), shall, upon conviction of that offense, be punished by an additional term of one, two, or three years in the court's discretion. . . ."

B. *The Instruction*

Defendants claim the trial court erred because (1) it did not instruct the jury that a defendant must be "personally armed" for purposes of section 12022, subdivision (c); and (2) the instruction actually given improperly permitted a jury finding of "true" based solely on vicarious liability. We agree.

■ The three pertinent subdivisions of section 12022 are distinguished by the nature of the liability imposed by each.[18] Subdivision (a) provides for both personal and vicarious liability. (*People* v. *Superior Court* (*Pomilia*) (1991) 235 Cal.App.3d 1464, 1469 [1 Cal.Rptr.2d 386].) Thus, a person is "armed" with a firearm when he or she carries such weapon or has it available for use in either offense or defense. (Cf. *People* v. *Reaves* (1974) 42 Cal.App.3d 852, 856-857 [117 Cal.Rptr. 163].) A person is also "armed" with a firearm under subdivision (a), even though he or she did not personally have possession of a weapon, if his or her coprincipal was armed during commission of the offense. (§ 12022, subd. (a)(1); *People* v. *Federico* (1981) 127 Cal.App.3d 20, 31 [179 Cal.Rptr. 315].) Section 12022, subdivision (d) provides only for vicarious liability, upon certain other requirements being met. (*People* v. *Superior Court* (*Pomilia*), *supra*, 235 Cal.App.3d at p. 1469.) By contrast, subdivision (c) of section 12022 expressly provides *only* for personal liability. (*People* v. *Superior Court* (*Pomilia*), *supra*, at p. 1469.)

The words "personally armed" in section 12022, subdivision (c) do not require that the firearm be physically carried on the defendant's person. (*People* v. *Superior Court* (*Pomilia*), *supra*, 235 Cal.App.3d at p. 1472.) As Division One of the Court of Appeal, Fourth Appellate District, found, "There is nothing in the legislative history evidencing any intent on the part of the Legislature that enhanced punishment was proper only for those narcotics offenders who had firearms upon their persons, while those who had ready access to firearms were not to be so punished. Instead, the Legislature clearly intended to provide substantial additional punishment for all 'armed' narcotics offenders . . . ." (*Id.* at p. 1471.)

We arrived at the same conclusion in *People* v. *Mendival* (1992) 2 Cal.App.4th 562 [3 Cal.Rptr.2d 566]. We found nothing in section 12022, subdivision (c) which specified that being armed meant the firearm must be carried on the person. (*Mendival*, *supra*, at p. 573.) Instead, "[i]t is the availability—the ready access—of the weapon that constitutes arming." (*Id.* at p. 574.) We viewed the term "personally armed" as referring to the individual who had the firearm on his or her person, or had it available for offensive or defensive use. "This separates the responsibility [of] those who would be vicariously liable from those who are personally armed." (*Ibid.*) We concluded: "[T]he prohibited conduct is carrying the firearm or having it available for offensive or defensive use. 'Personally' refers to the person who engages in this prohibited conduct. Under Penal Code sections 12022,

---

[18]They are also distinguished by the offenses to which they apply. For example, Smith persuasively argues a section 12022, subdivision (c) enhancement cannot be imposed in conjunction with a conviction for conspiracy (§ 182). Given our resolution of the instructional challenge, we need not address this aspect of the statute.

subdivision (a) and 12022, subdivision (d) the responsibility of others who do not personally engage in the prohibited conduct is vicarious." (*Mendival, supra*, at p. 574.)

It therefore follows, as we held in *Mendival*, that two people can be personally armed with the same firearm.

"[W]e see no basis to limit applicability of the [section] 12022, subdivision (c) enhancement to one individual if both individuals have a firearm available for their ready access. The firearm is there for purposes of offensive or defensive use. It represents the same threat no matter which person grabs it. Ownership has no bearing, in our view, on culpability or degree of threat. Therefore, we view the question of whether a firearm is knowingly available for use in an offensive or defensive manner when it is accessible to more than one person to be a jury question. The issue to be resolved [is] whether the position of the firearm rendered it available for offensive or defensive use to only one or both of the coparticipants." (*People* v. *Mendival, supra*, 2 Cal.App.4th at pp. 574-575.)

We reaffirm *Mendival*'s construction of subdivision (c) of section 12022. We believe it comports with the California Supreme Court's interpretation of an analogous statute, section 12022.7, which mandates a sentence enhancement for one who "personally" (and intentionally) inflicts great bodily injury. (See *People* v. *Cole* (1982) 31 Cal.3d 568, 572 [183 Cal.Rptr. 350, 645 P.2d 1182].)

In addition, we believe *Mendival*'s interpretation is consistent with the legislative history of section 12022, subdivision (c). For example, the legislative materials set forth the definition of "armed" as it is contained in *People* v. *Reaves, supra*, 42 Cal.App.3d 852. (Assem. Office of Research, 3d reading analysis of Assem. Bill No. 3550 (1987-1988 Reg. Sess.) as amended May 12, 1988.) At no time during the various amendments to Assembly Bill No. 3550 was it suggested that subdivision (c) apply only to one who carries a firearm on his or her person. Instead, the purpose of the enactment was broadly stated; that is, "to deter the use of firearms in the sale of illegal drugs." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3550 (1987-1988 Reg. Sess.) as amended Aug. 1, 1988.) This purpose would not be served by limiting the enhancement only to those who actually carry a firearm during narcotics trafficking. However, it *is* served by differentiating between those who actually and knowingly have a firearm available for use (§ 12022, subd. (c)), and those who do not but who know that one of their cohorts does (§ 12022, subd. (d)).

We now examine the instructions given in this case to determine whether the law which governs liability under subdivision (c) of section 12022 was correctly conveyed to the jurors.

█ "Here the question is whether there is a 'reasonable likelihood' that the jury understood the charge as the defendant asserts. [Citations.] 'In addressing this question, we consider the specific language under challenge and, if necessary, the charge in its entirety. [Citation.] Finally, we determine whether the instruction, so understood, states the applicable law correctly.' [Citation.]" (*People* v. *Kelly* (1992) 1 Cal.4th 495, 525-526 [3 Cal.Rptr.2d 677, 822 P.2d 385], fn. omitted.)[19]

The trial court in this case instructed the jury in relevant part as follows:

"Now it is alleged in counts one, two, three, and seven that in the attempted commission of the crimes therein described the defendants charged in those counts were armed with a firearm, in violation of Penal Code Section 12022 A and 12022 C.

"If you find a defendant guilty of the crimes thus charged, you must also determine whether or not such defendant was armed with a firearm at the time the [*sic*] attempted commission of the crime.

"Now the term armed with a firearm means knowingly to carry a firearm or to have it available for use in either offense or defense.

". . . . . . . . . . . . . . . . . . . . . . . .

"A person is armed with a firearm if he or she was a principal in the attempted commission of the crimes charged in counts one, two, three, and seven, and any one of the principals, including the defendant, was armed with a firearm."

█ Obviously, this instruction incorrectly treated the section 12022 subdivision (a) and the subdivision (c) enhancements as providing for liability on the very same basis. Not only did it fail to tell the jury a defendant must be "personally" armed in order to support a finding of true with respect to the section 12022, subdivision (c) enhancement, it expressly permitted such a finding based only upon vicarious liability, i.e., on the fact another principal was armed. In view of the trial court's reference to a

---

[19]This is the standard applicable for reviewing ambiguous instructions. (*Estelle* v. *McGuire*, *supra*, 502 U.S. at p. __ [116 L.Ed.2d at p. 398, 112 S.Ct. at p. 482]; *People* v. *Clair* (1992) 2 Cal.4th 629, 663 [7 Cal.Rptr.2d 564, 828 P.2d 705].) We perhaps give the People the benefit of the doubt by construing the challenged instruction as ambiguous. If the instruction is interpreted as completely omitting a necessary element, it is subject to a higher standard of review. (See, e.g., *Pope* v. *Illinois* (1987) 481 U.S. 497, 503 [95 L.Ed.2d 439, 107 S.Ct. 1918]; *People* v. *Pensinger* (1991) 52 Cal.3d 1210, 1254 [278 Cal.Rptr. 640, 805 P.2d 899]; *People* v. *Odle* (1988) 45 Cal.3d 386, 414-415 [247 Cal.Rptr. 137, 754 P.2d 184].)

violation of both subdivisions (a) and (c) and the instruction's explanation of the circumstances under which a defendant can be found to have been armed with a firearm, there is more than a mere reasonable likelihood the jury understood the charge to permit a "true" finding as to the section 12022, subdivision (c) allegations based solely on vicarious liability. ██ ██ The trial court therefore did not carry out its sua sponte duty " '[to] instruct on the general principles of law relevant to the issues raised by the evidence.' " (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913], disapproved on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]; *People* v. *McElrath* (1985) 175 Cal.App.3d 178, 185 [220 Cal.Rptr. 698].)[20]

We urge the CALJIC committee to promulgate a new instruction for use when a personal arming allegation under section 12022, subdivision (c) is in issue. Such an instruction might read:

"It is alleged in [Count[s] ____] that in the [attempted] commission of the crime therein described defendant[s] [____ and ____] [was][were] personally armed with a firearm.

"If you find a defendant guilty of the crime[s] thus charged, you must determine whether or not such defendant was personally armed with a firearm at the time of the [attempted] commission of the crime[s].

"The term 'armed with a firearm' means knowingly to carry a firearm [or have it available for use] as a means of offense or defense.[21]

"The word 'firearm' includes a pistol, revolver, shotgun, [or] rifle [or any other device, designed to be used as a weapon from which a projectile may be expelled by the force of an explosion or other form of combustion.]

"The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true.

---

[20]The People make their oft-repeated, but only occasionally applicable, contention the issue was waived, or alternatively that any error was invited, because defendants failed to object to, or request modification of, the challenged instruction. As appellate courts have explained time and again, merely acceding to an erroneous instruction does not constitute invited error. (See, e.g., *People* v. *Wickersham* (1982) 32 Cal.3d 307, 332 [185 Cal.Rptr. 436, 650 P.2d 311]; *People* v. *Cole* (1988) 202 Cal.App.3d 1439, 1446 [249 Cal.Rptr. 601].) Nor must a defendant request amplification or modification in order to preserve the issue for appeal where, as here, the error consists of a breach of the trial court's fundamental instructional duty.

[21]"Personally" need not be separately defined. Various other CALJIC instructions use the term without definition. Since " '[p]ersonally' refers to the person who engages in this prohibited conduct" (*People* v. *Mendival, supra*, 2 Cal.App.4th at p. 574), its insertion into the instruction should to be sufficient to tell the jury that the defendant him—or herself had to knowingly carry the firearm or have it available for use to be found liable. For purpose of clarity, we have inserted "for use" in the optional "or have it available" clause. (Cf. CALJIC No. 17.15 (1991 rev.) (5th ed. pocket pt.).)

"You will include a special finding on that question using a form that will be supplied for that purpose."

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

IV. *Sentencing Errors**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgments are reversed as to the section 12022, subdivision (c) allegations, and the sentences imposed thereon are vacated. Retrial of defendants with respect to these enhancements is barred.

In addition, the remaining portions of the judgments which imposed sentence upon each defendant are vacated, and the matters are each remanded for resentencing.

In all other respects, the judgments are affirmed.

Vartabedian, J., and Franson, J.,† concurred.

A petition for a rehearing was denied September 6, 1992.

---

*See footnote, *ante*, page 196.

†Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.