Filed 4/3/17

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B269000 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. VA133796) |
| ALICE RASCON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Raul Anthony Sahagun, Judge. Affirmed as modified.

Lenore De Vita, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Jason Tran, and Nathan Guttman, Deputy Attorneys General, for Plaintiff and Respondent.

---

**\*** Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts I, II, III and V of the Discussion.

Alice Rascon appeals from the judgment entered on her convictions for drug, firearm, and ammunition possession. She contends the trial court admitted a confession taken in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*) in that the police interrogated her in a way calculated to undermine her ability to make a free and rational choice about speaking. Rascon also contends insufficient evidence supported two firearm enhancements, and a sentence on one count should have been stayed because it constituted multiple punishment for a single act. She further contends that she is entitled to have her sentence for felony possession for sale of marijuana reduced to a misdemeanor. We agree that sentence on one of the counts should have been stayed, and otherwise affirm.

## BACKGROUND

On April 11, 2012, Los Angeles County Sheriff's deputies executed a search warrant at Rascon's residence in Whittier. They found Rascon in the kitchen, informed her that she was the suspect named in the warrant, and detained her in a patrol car. While Rascon was seated in the car, Detective William Campbell asked her what bedroom she lived in and she said the north bedroom. Detective Campbell then asked if she had anything illegal in the house. Rascon responded "yes."

Detective Campbell then left Rascon alone in the patrol car and participated in the search. The search recovered five bags of methamphetamines and 11 bags of marijuana from an unlocked safe in a closet, as well as numerous unused plastic baggies and three digital scales from the closet. The deputies also found ammunition and two operable, loaded handguns in an unlocked desk drawer in an office in the house. The office also contained a monitor displaying a live video feed from two exterior cameras surveilling

the front approach to the house. Mail addressed to Rascon was found in the sole bedroom in the house.

After the search, Detective Campbell returned to Rascon in the patrol car, informed her she was under arrest, and gave her a *Miranda* advisement. Rascon waived her *Miranda* rights by signing a preprinted form. In addition to circling answers on the form indicating the waiver, Rascon wrote, "I show[ed] the detectives where the meth was in the closet."

Detective Campbell asked Rascon who resided in the house. Rascon replied that she lived there with William Kennedy, her boyfriend. Detective Campbell asked whether she owned the drugs the deputies found. She admitted the drugs belonged to her, and stated Kennedy had nothing to do with them. Rascon refused to reply to a question about the scales and unused baggies, but when asked about a cellular phone found in the house, she said it belonged to her. Finally, when Detective Campbell asked about the guns deputies found, Rascon said, "I showed you where the meth and the handguns were."

Rascon was charged with possession of methamphetamines while armed, possession of methamphetamines and marijuana for sale, possession of ammunition, and possession of firearms by a felon, and it was alleged she was personally armed with a firearm while in possession of methamphetamines for sale and had suffered three prior narcotics convictions and served multiple prior prison terms. (Health & Saf. Code, §§ 11359, 11370.1, subd. (a), 11378; Pen. Code, §§ 667.5, subd. (b), 11370.2, subd. (c), 12022, subd. (c), 29800, subd. (a)(1), 30305, subd. (a)(1).)

A jury convicted Rascon on all counts and found true the allegation that she was armed with a firearm while in possession of methamphetamines. In a bifurcated trial, the trial court found Rascon had suffered prior narcotics convictions, but the court struck the prior prison term allegations without rendering a verdict on

them.  The court sentenced Rascon to three years in prison for methamphetamine possession plus five consecutive years for the firearm enhancement.  The court struck the remaining enhancement allegations.  The court imposed concurrent terms for the marijuana and armed methamphetamine possession convictions and imposed and stayed execution of sentence for the ammunition and felon/firearm possession convictions pursuant to Penal Code section 654, subdivision (a), which prohibits multiple punishment for a single act.  The court imposed various fines and fees and awarded Rascon 259 days of presentence custody credit.

Rascon timely appealed.

## DISCUSSION

### I.      There Was No *Miranda* Violation

"The Fourteenth Amendment to the federal Constitution and article I, section 15, of the state Constitution bar the prosecution from using a defendant's involuntary confession." (*People v. Massie* (1998) 19 Cal.4th 550, 576.)  "[A]ny statement obtained from a criminal suspect by a law enforcement officer during custodial interrogation is potentially involuntary because such questioning may be coercive." (*People v. Neal* (2003) 31 Cal.4th 63, 79.)  Thus, in *Miranda*, "the United States Supreme Court laid down its now familiar rule" (*ibid*.) that " 'a suspect [may] not be subjected to custodial interrogation unless he or she knowingly and intelligently has waived the right to remain silent, to the presence of an attorney, and, if indigent, to appointed counsel.' " (*People v. Dykes* (2009) 46 Cal.4th 731, 751.)  "In general, if a custodial suspect, having heard and understood a full explanation of his or her *Miranda* rights, then makes an uncompelled and uncoerced decision to talk, he or she has thereby knowingly, voluntarily, and intelligently waived them." (*People v. Cunningham* (2015) 61 Cal.4th 609, 642; see also (*Oregon v. Elstad* (1985) 470 U.S. 298, 308 (*Elstad*) [Once a

4

suspect receives the *Miranda* advisements, he "is free to exercise his own volition in deciding whether or not to make a statement to the authorities."].)

A suspect who makes an incriminating statement in response "to unwarned yet uncoercive questioning" may later waive his rights and confess after being "given the requisite *Miranda* warnings." (*Elstad*, *supra*, 470 U.S. at p. 318.) In such "midstream *Miranda* cases" (*People v. Camino* (2010) 188 Cal.App.4th 1359, 1363 (*Camino*)), "the unwarned admission must be suppressed," but "the admissibility of any subsequent statement" will depend upon "whether it is knowingly and voluntarily made." (*Elstad*, *supra*, 470 U.S. at p. 309.) In *Elstad*, the Supreme Court held that in such cases, "[t]he relevant inquiry is whether, in fact, the second statement was also voluntarily made. As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements. The fact that a suspect chooses to speak after being informed of his rights is, of course, highly probative." (*Id.* at p. 318.)

In *Missouri v. Seibert* (2004) 542 U.S. 600 (*Seibert*), the police deliberately used a two-step questioning technique whereby they withheld a *Miranda* advisement until a suspect confessed, then advised the suspect pursuant to *Miranda*, then led the suspect to cover the same ground until a second confession is obtained. (*Seibert*, *supra*, 542 U.S. at pp. 605-606 (plur. opn. of Souter, J.).) Police admitted the tactic was designed to undermine the *Miranda* warning by inducing a suspect "to conclude that the right not to respond did not exist when the earlier incriminating statements were made." (*Id.* at p. 620 (conc. opn. of Kennedy, J.).) Justice Souter, writing for a four-justice plurality, concluded that a second confession obtained in such circumstances is inadmissible because the "midstream recitation of warnings after interrogation and

5

unwarned confession could not effectively comply with *Miranda*'s constitutional requirement." (*Id.* at p. 604 (plur. opn. of Souter, J.).) "By any objective measure . . . it is likely that if the interrogators employ the technique of withholding warnings until after interrogation succeeds in eliciting a confession, the warnings will be ineffective in preparing the suspect for successive interrogation, close in time and similar in content. After all, the reason that question-first is catching on is as obvious as its manifest purpose, which is to get a confession the suspect would not make if he understood his rights at the outset; the sensible underlying assumption is that with one confession in hand before the warnings, the interrogator can count on getting its duplicate, with trifling additional trouble." (*Id.* at p. 613 (plur. opn. of Souter, J.).)

The *Siebert* plurality identified "a series of relevant facts that bear on whether *Miranda* warnings delivered midstream could be effective enough to accomplish their object: [T]he completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." (*Seibert*, *supra*, 542 U.S. at p. 615 (plur. opn. of Souter, J.).)

Justice Kennedy, writing separately, generally agreed with the plurality's views. (*Seibert*, *supra*, 542 U.S. at p. 618 (conc. opn. of Kennedy, J.).) He believed, however, that the plurality's "multifactor test that applies to every two-stage interrogation may serve to undermine [the] clarity" of *Miranda*. (*Id.* at p. 622 (conc. opn. of Kennedy, J.).) Justice Kennedy "would apply a narrower test applicable only in the infrequent case . . . in which the two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning." (*Ibid.*) In such cases, "postwarning statements that are related to the substance of prewarning

6

statements must be excluded absent specific, curative steps."[1] (*Id.* at p. 621 (conc. opn. of Kennedy, J.).)  When interrogators do not employ a "deliberate two-step strategy," however, "[t]he admissibility of postwarning statements should continue to be governed by the principles of *Elstad*."  (*Id.* at p. 622 (conc. opn. of Kenney, J.).)

Because the *Siebert* Court produced no majority opinion and Justice Kennedy " 'concurred in the judgment[] on the narrowest grounds' " (*Marks v. United States* (1977) 430 U.S. 188, 193), courts have considered Justice Kennedy's threshold requirement of a "deliberate two-step strategy" as part of the *Siebert* holding. (See, e.g., *Camino*, *supra*, 188 Cal.App.4th at p. 1370 & fn. 5; *United States v. Williams* (9th Cir. 2006) 435 F.3d 1148, 1157-1158.) In determining deliberateness, "courts should consider whether objective evidence," such as the *Siebert* plurality identified, as well as "any available subjective evidence, such as an officer's testimony, support an inference that the two-step interrogation procedure was used to undermine the *Miranda* warning." (*Id.* at p. 1158.)

A trial court's determination of *Siebert*-deliberateness is a factual finding, which we review for substantial evidence.  (*Camino*, *supra*, 188 Cal.App.4th at p. 1372.)

---

[1] Justice Kennedy explained that "[c]urative measures should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning and of the *Miranda* waiver.  For example, a substantial break in time and circumstances between the prewarning statement and the *Miranda* warning may suffice in most circumstances, as it allows the accused to distinguish the two contexts and appreciate that the interrogation has taken a new turn.  [Citation.]  Alternatively, an additional warning that explains the likely inadmissibility of the prewarning custodial statement may be sufficient."  (*Seibert*, *supra*, 542 U.S. at p. 622 (conc. opn. of Kennedy, J.).)

7

In the instant case, Rascon moved in limine to suppress all of her custodial statements. Detective Campbell was the sole witness at the resulting Evidence Code section 402 hearing. He testified that he asked Rascon at the start of the interview if she had anything illegal in the house. Rascon answered "yes." The interview was interrupted when Detective Campbell left Rascon to participate in the search. Rascon did not recall how much time passed before the search was completed and the interview resumed.

When Detective Campbell returned, he advised Rascon of her *Miranda* rights and obtained her waiver. He then asked who lived in the house and who owned the drugs and cell phone the deputies found. Rascon replied that she lived in the house with her boyfriend, but the drugs and phone were hers. Rascon refused to answer a question about unused baggies and digital scales, but when asked about the guns deputies found said, "I told you where the meth . . . and handguns were."

Detective Campbell testified Rascon gave her answers freely and voluntarily. She was not handcuffed while in the patrol car, and he issued no threats and made no statement implying that failure to answer would be detrimental to her. Detective Campbell took no notes, and the interrogation was not recorded.

The trial court granted Rascon's motion to suppress the statements she made before waiving her *Miranda* rights. The court, however, found no evidence that Detective Campbell employed a deliberate strategy to undermine the *Miranda* warning by inducing Rascon to confess before giving the warning and then leading her to repeat the confession after the warning. The court therefore denied Rascon's motion to suppress statements made after she waived her *Miranda* rights.

Substantial evidence supports the trial court's finding that Detective Campbell did not deliberately use a two-step interrogation technique to undermine the *Miranda* warning. The prewarning

interrogation was nondetailed and incomplete. Detective Campbell asked what bedroom she lived in and whether there was anything illegal in the house. Rascon identified her bedroom and revealed that she "had" something illegal in the house. The interview was then interrupted, but the interruption was caused by Detective Campbell's desire to participate in the search, not by artifice. The interview resumed only after passage of a significant amount of time—long enough to search a house. Nothing in either Detective Campbell's questions or Rascon's answers suggested that either person treated the second round of interrogation as a continuation of the first. Further, the content of Rascon's pre- and postwarning statements did not substantially overlap. Prior to being given the *Miranda* advisement, Rascon disclosed that she lived in the house and there was something illegal in the house. In the postwarning part of the interview, Rascon revealed that she owned the drugs in the house, that she knew the drugs were methamphetamines, and that she knew guns were in the house.

Moreover, nothing suggests police used inherently coercive tactics or methods that rendered Rascon's initial admission involuntary or undermined her will to invoke her rights once they were read to her. Therefore, substantial evidence supports the trial court's conclusion that Rascon knowingly and voluntarily decided to forgo her rights to remain silent and to have the assistance of counsel.

Rascon argues some indicia of a deliberate two-step interrogation exist, as both parts of the interrogation were conducted by the same person in the same location. These factors arguably could have permitted the trial court to conclude the interview was improper, but our review is to determine only whether substantial evidence supports the court's contrary finding. As discussed above, other factors support the court's finding that Rascon's *Miranda* rights were not violated.

9

Given this conclusion, we need not address Rascon's arguments that absent her confession, no substantial evidence supported her convictions for possession for sale of methamphetamine and marijuana, possession of methamphetamine while armed, possession of a firearm by a felon, and possession of ammunition.

## II. Substantial Evidence Supported the Finding That Rascon Was Armed

The jury found true the special allegation that Rascon was personally armed while in possession of methamphetamines for sale. Rascon argues insufficient evidence supported the finding because the guns recovered from her house were far away from both herself and the drugs. We disagree.

"The desire of the Legislature to prevent death and injury as a result of the involvement of firearms in the commission of crime is manifest from the various provisions for increased punishment for crimes where firearms are in some way involved. The underlying intent of the Legislature is to deter persons from creating a potential for death or injury resulting from the very presence of a firearm at the scene of the crime. Thus, there is aggravated punishment for a person who is armed with a deadly weapon even though no use is made of the weapon. (*People v. Reaves* (1974) 42 Cal.App.3d 852, 856-857.)

As pertinent here, subdivision (c) of Penal Code section 12022 imposes a special sentence enhancement of three, four, or five years on anyone "personally armed with a firearm in the commission of a violation . . . of Section . . . 11378" (possession of methamphetamine for the purpose of sale). "[W]hen . . . a defendant engaged in felony drug possession, which is a crime of a continuing nature, has a weapon available at any time during the felony to aid in its commission, the defendant is 'armed with a firearm in the

commission . . . of a felony.' " (*People v. Bland* (1995) 10 Cal.4th 991, 999.)

In assessing the sufficiency of evidence supporting a sentence enhancement, we view the entire record, including all reasonable inferences, in a light most favorable to the judgment. A sentence enhancement will be upheld if it is supported by substantial evidence, i.e., evidence that is credible and of solid value. (*People v. Osband* (1996) 13 Cal.4th 622, 690; *In re Alexander L.* (2007) 149 Cal.App.4th 605, 610.) An enhancement will be reversed only when the evidence would not permit any reasonable trier of fact to find the special allegation true beyond a reasonable doubt. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) Reversal is not warranted simply because the evidence might support contrary findings equally as well as actual findings. (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139.)

Here, Rascon kept two loaded handguns in a desk drawer in an office in her residence. In the same room, there was a monitor showing the front approach to the house. This placed the guns relatively close not only to the drugs, which were in a closet outside the office, but also to a monitor that could reasonably be inferred to have assisted Rascon in selling drugs by providing security for the operation. Therefore, the guns were readily accessible to aid in the commission of the drug offense. (See, e.g., *People v. Bland*, *supra*, 10 Cal.4th at p. 1000 [evidence that an assault weapon was kept in a bedroom near drugs supported " 'armed with a firearm' " enhancement]; *People v. Wandick* (1991) 227 Cal.App.3d 918, 921, 928 [firearms in bedroom and drugs in other rooms supported armed enhancement]; cf. *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1030 [a defendant not in the residence possesses but is not armed with weapons located at his residence].)

Rascon argues the guns found in the office were not readily available for use because they were not in close proximity to either

11

herself or the drugs.  The argument is without merit.  For a firearm enhancement to be proper in a drug case, the gun need only be readily accessible; it need not always be in close proximity either to the owner or the drugs.  Because drug possession is a continuing offense, the jury could reasonably infer that Rascon at some point had ready access to both the guns and drugs in her own house.

### III.   Substantial Evidence Supported the Finding That the Guns Were Operable

The jury found Rascon guilty of possessing methamphetamines while armed with an operable firearm.  Rascon argues insufficient evidence supported the verdict because nothing suggested the guns recovered from her house were operable.  We disagree.

Any person who unlawfully possesses methamphetamines "while armed with a loaded, operable firearm is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years."  (Health & Saf. Code, § 11370.1, subd. (a).)

Here, deputies recovered methamphetamines and two loaded handguns from Rascon's home.  Rascon admitted the drugs were hers.  Two deputies testified that they examined the guns, which appeared to be operable.

Rascon argues the only way to prove a gun is operable is to test fire it, which the deputies in this case did not do.  No principle or authority supports the argument.  That the guns were loaded permitted the jury to infer they were operable, because there is no reason to load a gun that does not work.

12

## IV. Rascon Is Not Automatically Entitled to a Reduction of Her Sentence on Count 10

Rascon contends her sentence on count 10 for possession of marijuana for sale in violation of Health and Safety Code section 11359 "must be corrected" to reflect a post-sentencing statutory amendment that reduced the penalty for that crime.[2] We disagree.

At the time Rascon committed her crimes, and at the time the trial court sentenced her, Health and Safety Code section 11359 provided: "Every person who possesses for sale any marijuana, except as otherwise provided by law, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code." Penal Code section 1170, subdivision (h) provides generally for "imprisonment in a county jail for 16 months, or two or three years." Here, the court imposed the upper term of three years, the sentence to run concurrent to other specified terms.

After Rascon was sentenced, the electorate passed the Control, Regulate and Tax Adult Use of Marijuana Act, Proposition 64, which amended Health and Safety Code section 11359 to provide, generally, that "[e]very person 18 years of age or over who possesses marijuana for sale shall be punished by imprisonment in a county jail for a period of not more than six months or by a fine of not more than five hundred dollars ($500), or by both such fine and

---

[2] After the parties filed their briefs, Rascon asserted this argument in a letter brief filed with the court in which she requested that we consider the matter at oral argument. We granted her request. The Attorney General subsequently filed a written response and the parties were given the opportunity to argue the issue during oral argument.

imprisonment." (Health & Saf. Code, § 11359, subd. (b).)[3] Thus, if the amendment is retroactive and this general rule applies to Rascon, her felony conviction for violating Health and Safety Code section 11359 would be reduced to a misdemeanor.

Proposition 64 also added Health and Safety Code section 11361.8, which allows a "person currently serving a sentence for a conviction" of Health and Safety Code section 11359 (and other marijuana-related crimes) to petition the trial court to recall the person's sentence and resentence the person in accordance with the amended statute. (Health & Saf. Code, § 11361.8, subd. (a).) If an inmate files such a petition and satisfies the statutory criteria for relief, "the court shall grant the petition . . . unless the court determines that granting the petition would pose an unreasonable risk of danger to public safety." (Health & Saf. Code, § 11361.8, subd. (b).) An "unreasonable risk of danger to public safety" is defined as "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of [Penal Code section 667, subdivision (e)(2)(C)(iv)]." (Pen. Code, § 1170.18, subd. (c); Health & Saf. Code, § 11361.8, subd. (b)(2).)

Rascon contends that the amendment to Health and Safety Code section 11359 should be applied retroactively to reduce

---

[3] There are exceptions to the general rule. The penalty prescribed in Penal Code section 1170, subdivision (h), still applies if the defendant: (1) has a prior conviction for certain serious or violent felonies, or is required to register as a sex offender, (2) has two or more prior convictions of possessing marijuana for sale, (3) commits the offense in connection with the sale or attempted sale of marijuana to a minor, or (4) knowingly employs a person 20 years old or younger to cultivate, transport, carry, sell, offer to sell, give away, or peddle marijuana. (Health & Saf. Code, § 11359, subds. (c)-(d).) It is not apparent from our record whether any of the exceptions apply.

her conviction on count 10 to a misdemeanor.  She relies on
*In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).  In *Estrada*, the
Supreme Court established an exception to the general rule that
a statute that is silent as to whether it operates prospectively or
retroactively will be presumed to operate prospectively only.
(*People v. Brown* (2012) 54 Cal.4th 314, 323.)  The exception applies
when a statute that is silent as to its retroactivity reduces the
penalty for a particular crime.  In that situation, courts will presume
that "the new lighter penalty" will apply "to acts committed before
its passage[,] provided the judgment convicting the defendant of
the act is not final."  (*In re Estrada, supra*, 63 Cal.2d at p. 745.)
The *Estrada* Court explained that when the Legislature reduced a
crime's punishment, it "obviously expressly determined that its
former penalty was too severe and that a lighter punishment is
proper as punishment for the commission of the prohibited act."
(*Ibid.*)  Given this determination, the Court continued, the
Legislature must have intended that the lesser penalty applies
retroactively "because to hold otherwise would be to conclude
that the Legislature was motivated by a desire for vengeance, a
conclusion not permitted in view of modern theories of penology."
(*Ibid.*)

In *People v. Conley* (2016) 63 Cal.4th 646, 656 (*Conley*), our
Supreme Court considered whether, under *Estrada*, the Three
Strikes Reform Act of 2012, commonly known as Proposition 36,
applied retroactively to persons whose judgments were not yet
final.  Proposition 36 amended the "Three Strikes" law to reduce
the penalty for some third strike offenders when the third strike
is not a serious or violent felony.  It also enacted Penal Code
section 1170.126, which created a post-conviction procedure whereby
a prison inmate "presently serving" a third strike sentence for a
crime that was not a serious or violent felony may petition to recall
his or her sentence and be resentenced as a second strike offender.

15

(*People v. Johnson* (2015) 61 Cal.4th 674, 682.) The inmate in *Conley* argued that he was entitled under *Estrada* to the reduced penalty because his judgment was not yet final and, therefore, he did not "need to file a recall petition under Penal Code section 1170.126." (*Conley*, *supra*, 63 Cal.4th at pp. 655-656.) The Supreme Court rejected the argument.

Proposition 36, the *Conley* Court explained, "is not silent on the question of retroactivity. Rather, [Proposition 36] expressly addresses the question in [Penal Code] section 1170.126, the sole purpose of which is to extend the benefits of [Proposition 36] retroactively." (*Conley*, *supra*, 63 Cal.4th at p. 657.) Moreover, the Court reasoned, by making resentencing available only when the inmate's early release would not "pose an 'unreasonable risk of danger to public safety,'" the electorate apparently intended "to create broad access to resentencing for prisoners previously sentenced to indeterminate life terms, *but subject to judicial evaluation of the impact of resentencing on public safety*." (*Id.* at pp. 658-659, italics added.) This purpose would not be served if, as the defendant argued, the statute "confer[red] an automatic entitlement to resentencing" for inmates whose cases are still pending on appeal. (*Id.* at p. 659.) There was no basis, the Court concluded, to hold that the electorate intended "for courts to bypass the public safety inquiry altogether in the case of defendants serving sentences that are not yet final." (*Ibid.*)

*Conley*'s analysis applies with equal force here. Proposition 64, like Proposition 36, "is not silent on the question of retroactivity." (See *Conley*, *supra*, 63 Cal.4th at p. 657.) It provides for a procedure analogous to Proposition 36's procedure "for application of the new lesser punishment to persons who have previously been sentenced." (*Id.* at p. 658; compare Health & Saf. Code, § 11361.8 with Pen. Code, § 1170.126.) Proposition 64, like Proposition 36, expressly restricts the availability of the

16

reduced criminal penalties to those inmates who do not pose an unreasonable risk of danger to public safety (Health & Saf. Code, § 11361.8, subd. (b)), thereby making "retroactive application of the lesser punishment contingent on a court's evaluation of the defendant's dangerousness." (*Conley*, *supra*, 63 Cal.4th at p. 658.)[4] In light of the similarities between the two propositions as to resentencing, we infer a similar intent on the part of the electorate—to create access to resentencing for prisoners previously sentenced for specified marijuana-related crimes, "but subject to judicial evaluation of the impact of resentencing on public safety." (*Id*. at pp. 658-659.) And, just as conferring an automatic entitlement to resentencing under Proposition 36 would undermine that intent (*id*. at p. 659), so would a similar entitlement undermine the apparent intent in enacting Proposition 64. We therefore conclude that a person sentenced prior to the enactment of Proposition 64 for violating Health and Safety Code section 11359 whose judgment is not yet final is not automatically entitled to the reduction of punishment provided by the amendment to that statute.

---

[4] The Safe Neighborhood and Schools Act, commonly known as Proposition 47, enacted by the electorate in 2014, also reduces penalties for certain crimes and provides a procedure for those currently serving sentences for such crimes to petition to recall the inmate's sentence that is analogous to the procedures in Proposition 36 and Proposition 64. (Pen. Code, § 1170.18.) The Supreme Court is currently considering whether Proposition 47 applies retroactively to a defendant who was sentenced before Proposition 47's effective date but whose judgment is not yet final. (*People v. DeHoyos* (2015) 238 Cal.App.4th 363, review granted Sept. 30, 2015, S228230.)

## V. Stayed Sentence on Armed Possession Count

Penal Code section 654 provides in part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (Pen. Code, § 654, subd. (a).) The statute thus precludes multiple punishments for a single act or an indivisible course of conduct. (*People v. Hester* (2000) 22 Cal.4th 290, 294.)

Here, the jury convicted Rascon of possession of methamphetamines for sale while personally armed (count 7), and found true the allegation that she possessed a firearm while committing the crime. The court imposed a three-year base sentence and a consecutive five-year enhancement. (Pen. Code, § 12022, subd. (c).) The jury also convicted Rascon of possession of methamphetamines while armed with an operable firearm (count 8). On this count, the court imposed a four-year sentence to run concurrent to the sentence on count 7. (Health & Saf. Code, § 11370.1, subd. (a).) But evidence supporting both the enhancement and the conviction on the latter count was the same: Rascon possessed methamphetamines while armed with a gun. Because this single act of possession formed the basis of both sentences, the lesser sentence must be stayed. (See, e.g., *People v. Pearson* (1986) 42 Cal.3d 351, 359 ["when multiple convictions are based on a single act, as in this case, . . . the use of such convictions must not result in the defendant being 'punished under more than one' Penal Code provision"]; *People v. Pitts* (1990) 223 Cal.App.3d 1547, 1558-1559.)

18

## DISPOSITION

The trial court is ordered to amend the abstract of judgment and file a minute order reflecting that the sentence on count 8, for violation of Health and Safety Code section 11370.1, subdivision (a), is stayed pursuant to Penal Code section 654, and to forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.  As so modified, the judgment is affirmed.

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>.


ROTHSCHILD, P. J.

We concur:



JOHNSON, J.



LUI, J.

19