Filed 5/23/22  P. v. Aguilar CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROSAURA MACHADO AGUILAR,<br><br>    Defendant and Appellant. | D079877<br><br><br>(Fresno Super. Ct.<br>No. F18905370) |

APPEAL from a judgment of the Superior Court of Fresno, Jane Cardoza, Judge.  Remanded for resentencing.

Lindsay Sweet and Michelle Theresa Livechhi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

Following a search of her apartment that yielded weapons and drugs, Rosaura Machado Aguilar was tried and convicted of felony child abuse (Pen. Code, § 273a, subd. (a), count 1), possession for sale of a controlled substance (Health & Saf. Code § 11378, count 2), possession of a controlled substance with a firearm (*id.*, § 11370.1, subd. (a), count 3), and possession of a smoking device (*id.*, § 11364, count 9, a misdemeanor). As to count 2, the jury additionally found that Aguilar was personally armed with a firearm in possessing the drugs for sale. (Pen. Code,[1] § 12022, subd. (c).)

Aguilar raises several claims on appeal. She first contends the trial court prejudicially erred in failing to instruct the jury sua sponte on misdemeanor child abuse, a lesser included offense on count 1. Noting the jury hung on other standalone firearm charges, she next challenges the true finding on the personal arming enhancement attached to count 2, claiming both insufficiency of the evidence and instructional error. For reasons we explain, we reject each of these contentions.

Turning to Aguilar's final argument, recent legislation requires us to remand for a full resentencing hearing, where the court must decide whether to stay the term imposed on count 2 or count 3 under section 654, as amended by Assembly Bill No. 518 (Assembly Bill 518) (Stats. 2021, ch. 441). At resentencing, the parties may address other recent legislative amendments that may affect the trial court's sentencing choices. Accordingly, we remand for resentencing and otherwise affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

One evening in August 2018, social worker Jennifer Moore received a crisis referral asking her to check on a family in Huron. Because the caller

---

[1] Further undesignated statutory references are to the Penal Code.

indicated the presence of methamphetamine in the home, Moore contacted police. Officer Randall Doherty of the Huron Police Department arrived at the given address around 8:00 p.m. and saw a 4- or-5-year-old girl walk outside the front door of Aguilar's apartment. Doherty asked the child if her mother was home; the girl nervously went back inside without closing the door. Peering in, Doherty noticed Vicente Licea asleep on a queen-size mattress on the living room floor, with 18-month-old John Doe sleeping beside him. Aguilar walked into the living room with the young girl Doherty had seen moments before, as well as another child. Doherty entered the apartment, awoke Licea, and searched him. Inches from John on the bed lay a small glass pipe with traces of burnt white residue.

On Licea's person, Doherty found a glass pipe and a plastic sandwich bag containing eight .380-caliber bullets. Officers then searched the apartment. Lifting the mattress from the box spring, they discovered a semiautomatic .233-caliber AR-15 assault rifle and a semiautomatic .380-caliber handgun. Both firearms were loaded, and each had a live round inside its firing chamber with additional rounds in their magazines. Doherty could not recall whether the safety was on for either weapon. Near the firearms but on the floor, officers saw 15 to 20 children's drawings, notebooks, and coloring books. The bullets found on Licea's person matched the handgun; additional bullets for the assault rifle were stored in a compartment within the rifle.

Perched on the seat of a chair near the bed, officers found a wallet, a cardboard shoebox, and a metal first-aid kit. A purse hanging on the back of the chair contained 26 glass pipes, 26.3 grams of what looked to be methamphetamine, and 1,100 empty plastic baggies. The wallet on the seat of the chair contained Aguilar's California identification card, her debit card,

and $422 in cash. The cardboard shoebox was closed and sealed shut with duct tape. Inside the box, officers found five small baggies bearing logos and containing a white substance, eight pipes, and a large quantity of residue. Opening the two latches on the metal first-aid kit, they discovered 62 baggies containing over two pounds of a white substance. On another chair nearby, they found a digital scale with traces of residue, as well as a cardboard box containing 1,000 empty plastic sandwich bags.

Aguilar and Licea were arrested; Moore took Aguilar's five children (ages 12 or 13, 11, 9 or 10, 5, and 1) into protective custody. A presumptive test confirmed the white substance in the purse and boxes to be methamphetamine. Aguilar told police she lived in that apartment with her five children but later informed Moore that her children had been staying with relatives. She denied knowing about the drugs or weapons found inside. Licea admitted to police that the narcotics and weapons were his and denied that Aguilar played any part.

The Fresno County District Attorney jointly charged Licea and Aguilar with child abuse and various drug and weapons offenses. Specifically, Aguilar was charged with felony child abuse as to 18-month-old John Doe (§ 273a, subd. (a), count 1); possession for sale of methamphetamine while personally armed with a firearm (Health & Saf. Code, § 11378; Pen. Code, § 12022, subd. (c), count 2); possession of methamphetamine while armed with a loaded, operable firearm (Health & Saf. Code, § 11370.1, subd. (a), count 3); possession of an assault weapon (Pen. Code, § 30605, subd. (a), count 4); two counts of possession of a firearm by a felon (Pen. Code, § 29800,

4

subd. (a)(1), counts 7 & 8); misdemeanor possession of a smoking device (Health & Saf. Code, § 11364, count 9).[2]

Aguilar and Licea were tried together. The jury convicted Aguilar on counts 1, 2, 3, and 9 and found the personal arming enhancement attached to count 2 true. But it hung on the separate weapons charges brought against her in counts 4, 7, and 8, and the court later dismissed those counts at the People's request.

In September 2019, the court sentenced Aguilar to five years in state prison. Selecting count 2 as the principal count, it imposed a two-year middle term as the base. It declined to strike the attached firearm enhancement, but found appropriate a lower three-year term on that enhancement. Concluding that the subordinate counts likewise stemmed from a "single period of aberrant behavior," the court ran all the terms concurrently. It imposed a four-year middle term on count 1 and a three-year middle term on count 3. Aguilar received credit for time served on the misdemeanor conviction in count 9.

## DISCUSSION

Aguilar challenges her conviction on count 1, the personal arming enhancement on count 2, and the sentence on count 3. As we explain, we reject Aguilar's challenges to her convictions, but recent ameliorative legislation necessitates remand for a full resentencing hearing.

A.    *Lack of Instruction on Misdemeanor Child Abuse*

Aguilar was convicted in count 1 of felony child abuse as to her 18-month-old son, John Doe. "Misdemeanor child abuse (§ 273a, subd. (b)), is a lesser included offense of felony child abuse (§ 273a, subd. (a))." (*People v.*

---

[2]    Prior to trial, the court granted the People's motion to dismiss count 10, a misdemeanor drug possession charge.

*Moussabeck* (2007) 157 Cal.App.4th 975, 980.) Aguilar claims it was reversible error for the trial court not to instruct the jury on misdemeanor child abuse. As we explain, no instructional error occurred.

The crime of child abuse can constitute either a felony or a misdemeanor, depending on whether it occurs "under circumstances or conditions likely to produce great bodily harm or death." (Compare § 273a, subd. (a) with *id.*, subd. (b).) "[G]iven the interest protected, i.e., the lives of highly vulnerable children, the definition of 'likely' in the context of [the felony offense defined in] section 273a is not that death or serious injury is probable or more likely than not." (*People v. Wilson* (2006) 138 Cal.App.4th 1197, 1204.) Rather, " 'likely' as used in section 273a means a substantial danger, i.e., a serious and well-founded risk, of great bodily harm or death." (*Ibid.*)

Because no evidence was presented at trial that baby John could move around on his own, Aguilar suggests a reasonable jury could find that the firearms wedged between the mattress and box spring as well as the drugs contained in shut boxes "were not accessible" to him. Although Officer Doherty testified that a methamphetamine pipe bearing traces of burnt residue lay inches from John on the bed, he never photographed the pipe in his report. Absent evidence that John was ambulatory, Aguilar maintains there was substantial evidence that the conditions endangering him were negligent but nonetheless *unlikely* to produce great bodily harm or death. Although other children in the apartment might have amplified the risks to John, Aguilar was supervising them, and Licea's body weight over the mattress rendered the firearms less accessible. In short, Aguilar maintains that the circumstances rendered great bodily harm possible, though improbable, supporting conviction on the misdemeanor offense.

6

"[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support." (*People v. Breverman* (1998) 19 Cal.4th 124, 162 (*Breverman*).) A sua sponte instructional duty arises only if there is substantial evidence from which a reasonable jury could conclude that the defendant is guilty of the lesser, but not the greater offense. (*Ibid.*) Thus, for example, it was reversible error for the trial court to not instruct on misdemeanor elder abuse in *People v. Racy* (2007) 148 Cal.App.4th 1327 (*Racy*), where the victim did not actually suffer great bodily harm and "the evidence supporting the guilty verdict of felony elder abuse was not so compelling that the jury instead could have reasonably reached a guilty verdict of misdemeanor elder abuse." (*Id.* at pp. 1334–1336.)[3]

Here, in contrast to *Racy*, no instructional error occurred. As the People suggest, the presence of four other children in the household created a serious and well-founded risk of great bodily injury *to John* from the unsecured weapons and drugs. Although count 1 only alleged child abuse as to John, Moore testified that Aguilar had five children, ages 12 or 13, 11, 9 or 10, 5, and 1. Besides John, who was one-and-a-half at the time of the search, Doherty saw a child between the ages of 4 or 5 as well as one other child in the apartment. Taken with Moore's testimony, that meant there were children as young as 1, 5, and 9 in the house at the time the guns were found.

The presence of other children readily leads us to reject Aguilar's instructional error claim. True enough, John was asleep on the bed when

---

[3]     Because the elder abuse statute "was patterned on and is virtually identical to" the child abuse statute, "[c]ases interpreting one section are therefore appropriately used to interpret the other." (*People v. Valdez* (2002) 27 Cal.4th 779, 784, fn. 4.)

officers arrived, suffered no injury, and potentially could not move around on his own. Defense counsel cast doubt on Doherty's testimony about finding a pipe on the bed, noting he neglected to photograph it. The firearms were wedged between a queen mattress and box spring that the People acknowledge would be too heavy for a one-year-old to lift. And the methamphetamine was discovered inside a purse, a taped-shut shoebox, and a latched metal first-aid box of arguably limited accessibility to an 18-month-old child.

But as the People suggest, the presence of children as young as 5 and 9 in the apartment at the time of Doherty's search "dramatically increased the probability for great bodily harm" to John from loaded semiautomatic weapons being kept under the mattress. Although the firearms were less accessible while Licea lay over them, there was no indication Licea's body was positioned that way *at all times*. There were children's coloring books and drawings on the floor near where the weapons were wedged. On these facts, the evidence did not reasonably support a conviction of misdemeanor child abuse, meaning no instructional error occurred. (See *Breverman, supra,* 19 Cal.4th at p. 162 [the existence of any evidence, however weak, will not justify instructions on a lesser included offense].)

B.      *Sufficiency of the Evidence as to the Personal Arming Enhancement*

After convicting Aguilar of possession for sale of a controlled substance (Health & Saf. Code, § 11378) in count 2, the jury determined that she was "personally armed with a firearm" in committing the offense. (Pen. Code, § 12022, subd. (c).) Aguilar challenges the sufficiency of the evidence supporting that enhancement finding. We review her claim " 'using the same standard we apply to a conviction.' " (*People v. Wilson* (2008) 44 Cal.4th 758, 806.) Reviewing the entire record in the light most favorable judgment, we

8

" ' "determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*Ibid.*)

Section 12022, subdivision (c) adds a consecutive prison term of three, four, or five years where a person "is personally armed with a firearm in the commission of a violation of attempted violation of Section . . . 11378 . . . of the Health and Safety Code." Aguilar concedes the evidence would have supported a *vicarious* arming enhancement under subdivisions (a) or (d) of that statute,[4] but emphasizes that only a personal arming enhancement under subdivision (c) was charged. Noting the jury could not reach a verdict as to her standalone firearm possession charges (counts 4, 7, and 8) and highlighting Licea's admission that both firearms were his, Aguilar contends "it is only through speculation, surmise or vicarious liability that the jury could have found [her] *personally* armed within the meaning of section 12022." (Italics added.) Although she admits that "two people can be personally armed with the same firearm" (*Smith, supra,* 9 Cal.App.4th at p. 205), Aguilar claims the evidence at trial indicated that she was at most *vicariously* armed through Licea. (See, e.g., *People v. Superior Court (Pomilia)* (1991) 235 Cal.App.3d 1464, 1469 (*Pomilia*) [personal arming enhancement under section 12022, subdivision (c) may not rest on vicarious liability].)

---

4       Section 12022, subdivision (a) adds a one-year consecutive term of imprisonment where a person "is armed with a firearm in the commission of a felony or attempted felony." This subdivision applies to both personal and vicarious arming. (*People v. Smith* (1992) 9 Cal.App.4th 196, 204 (*Smith*).) Subdivision (d) provides an enhancement of one, two or three years for vicarious arming as to "a person not personally armed with a firearm" who knows that another principal is "personally armed" during the commission of those same offenses. (See *Smith,* at p. 204.)

We disagree. For the jury to find that Aguilar was personally armed, the firearms did not need to be on Aguilar's person, but merely available for her offensive or defensive use. (*People v. Mendival* (1992) 2 Cal.App.4th 562, 574 (*Mendival*) ["It is the availability—the ready access—of the weapon that constitutes arming."].) Viewing the record in the light most favorable to the judgment, a rational jury could conclude that two firearms wedged between the mattress and box spring in her living room, discovered by police while Aguilar was inside her apartment, were available to Aguilar for her offensive or defensive use. (See *Pomilia, supra,* 235 Cal.App.3d at p. 1472 [two loaded pistols in the room from which police officers saw defendant emerge could reasonably be deemed " 'available for [defendant's] use in offense or defense' "].) It is not the case, as Aguilar claims, that the only way to read the verdicts is to conclude the jury relied on a theory that she was *vicariously* armed through Licea. Licea's admission that he owned the weapons did not affect their availability for Aguilar's use. Although ammunition was found on Licea's person matching the firearms, the guns themselves were loaded and available for Aguilar's use. Finally, inconsistent verdicts between the personal arming enhancement and standalone firearm possession counts do not affect our analysis on sufficiency-of-the-evidence review. (*People v. Covarrubias* (2016) 1 Cal.5th 838. 890−891 (*Covarrubias*); *People v. Hussain* (2014) 231 Cal.App.4th 261, 273.)

Even if the firearms were otherwise available to her, Aguilar maintains that Licea's positioning on the bed rendered them less accessible. This argument fails, however, for the simple reason that drug possession is a continuing offense. It is sufficient in this context that the jury could determine beyond a reasonable doubt that Aguilar had access to a firearm at any point in which she had dominion and control over illegal drugs and could

10

resort to a firearm to further that offense.  (*People v. Bland* (1995) 10 Cal.4th 991, 999 (*Bland*).)

Attempting to distinguish *Bland*, Aguilar notes that the Supreme Court in that case was considering the general firearm enhancement under subdivision (a) of section 12022.  Whereas the subdivision (a) enhancement permits liability based on *either* personal or vicarious arming, subdivision (c) applies only to *personal* arming—i.e., for the defendant to have the weapon available for offensive or defensive use.  (See *Smith, supra,* 9 Cal.App.4th at p. 204; *Mendival, supra,* 2 Cal.App.4th at p. 574.)  But this distinction is immaterial because *Bland* involved personal, not vicarious, arming under subdivision (a).  *Bland* stands for the proposition that drug possession for sale is a continuous offense, and a reasonable jury can find an attached personal arming enhancement true so long as there is sufficient evidence the firearm was available for the defendant's use in furtherance of the felony *at some point* during that continuing offense.  (*Bland, supra,* 10 Cal.4th at p. 1000.)  Thus, for example, the court in *Delgadillo* applied *Bland* to conclude sufficient evidence supported a true finding under section 12022, *subdivision* (*c*).  (*People v. Delgadillo* (2005) 132 Cal.App.4th 1570, 1574−1575.)

Here, police found large quantities of methamphetamine, plastic baggies, pipes, and a digital scale in Aguilar's apartment.  Her drug possession for sale was a continuing offense under *Bland*.  Although the weapons were admittedly Licea's, they were wedged between the mattress and box spring in Aguilar's living room, the same room where the drugs were discovered.  There was no evidence Licea was at all times positioned on the mattress over the drugs, and the jury could reasonably conclude that the firearms were available for Aguilar's offensive or defensive use *at some point*

11

during her felonious drug possession. (*Bland, supra,* 10 Cal.4th at p. 1000.)[5] Thus, substantial evidence supports the jury's finding on the personal arming enhancement in count 2 notwithstanding Licea's body positioning at the time of the search.

C.     *Instruction Given on the Personal Arming Enhancement*

Using a modified version of CALCRIM No. 3131, the court instructed the jury on the personal arming enhancement as follows:

> "If you find the defendants guilty of the crime charged in Count Two, you must then decide whether the People have proved the additional allegation that the defendants were personally armed with a firearm in the commission of that crime. You must decide whether the People have proved this allegation for each defendant and return a separate finding for each defendant." [¶] . . . [¶]

> "A person is *armed* with a firearm when that person: [¶] 1. Carries a firearm or has a firearm available for use in either offense or defense in connection with the crime charged; [¶] AND [¶] 2. Knows that he or she is carrying the firearm or has it available for use.

> "The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved."

---

[5]     Attempting to distinguish applicable case law, Aguilar argues that the two defendants in *Mendival, supra,* 2 Cal.App.4th 562 were personally armed with a single firearm on the front floorboard that either person could *reach* (*id.* at p. 575), whereas Aguilar "did not have ready access to firearms that were hidden underneath the mattress where Mr. Licea lay with his full body weight directly over the weapons." But absent evidence to support the unbelievable proposition that Licea never moved and was always positioned over the weapons wedged under the mattress in the living room, a jury could reasonably find that the firearms were available for Aguilar's use at some point during her felonious drug possession.

Aguilar argues the court committed prejudicial error in instructing the jury on the personal arming enhancement. By addressing *defendants* in plural, she contends the court erroneously invited the jury to find the personal arming enhancement allegation true based on an impermissible vicarious liability theory. (See *Smith, supra,* 9 Cal.App.4th at pp. 206–207 [instructional error occurred where the court's instructions "expressly permitted [a finding of personal arming under section 12022, subdivision (c)] based only upon vicarious liability"].) Aguilar asserts this error was prejudicial given the jury's failure to convict her on the standalone firearm possession counts.

"A claim of instructional error is reviewed de novo. [Citation.] An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law. [Citation.] In reviewing a claim of instructional error, the court must consider whether there is a reasonable likelihood that the trial court's instructions caused the jury to misapply the law in violation of the Constitution. [Citations.] The challenged instruction is viewed 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.' " (*People v. Mitchell* (2019) 7 Cal.5th 561, 579; see *Covarrubias, supra,* 1 Cal.5th at p. 926 ["When a defendant claims an instruction was subject to erroneous interpretation by the jury, he must demonstrate a reasonable likelihood that the jury misconstrued or misapplied the instruction in the manner asserted."].)

Viewing the instructions as a whole, it is clear that no error occurred. As Aguilar claims, jurors were told to decide whether "the defendants were personally armed with a firearm" in possessing methamphetamine for sale.

But in the very next breath, the instruction stated that jurors "must then decide whether the People have proved this allegation for *each* defendant and return a separate finding as to *each* defendant." (CALCRIM No. 3131, italics added.) It noted the People's burden "of proving *each* allegation beyond a reasonable doubt." (*Ibid.,* italics added.) Additionally, the jury was instructed under CALCRIM No. 203 that it was to decide "each charge for each defendant separately." In this context, there is no reasonable likelihood the jury misunderstood the instructions given in the manner Aguilar suggests.

D.     *Multiple Punishment*

Aguilar contends, and the People agree, that section 654's multiple punishment bar requires us to stay the concurrent three-year sentence imposed by the trial court on count 3. Aguilar's convictions in counts 2 and 3 were both based on her possession of methamphetamine and loaded firearms within her apartment. At trial the prosecutor argued that Aguilar and her codefendant possessed the methamphetamine for sale; he did not suggest any methamphetamine was possessed for personal use. Because counts 2 and 3 target "a single physical act that violates different provisions of law," section 654 precludes multiple punishment. (*People v. Jones* (2012) 54 Cal.4th 350, 358–359 [section 654 applied where three separate convictions were all premised on defendant having a gun in his car at the time of his arrest].)

Were this the only issue, we could simply stay the sentence imposed on count 3 as the parties jointly requested in their original briefs and otherwise affirm. However, a subsequent legislative amendment, addressed in supplemental briefing, necessitates remand for resentencing. At the time Aguilar was sentenced, section 654, former subdivision (a) provided in relevant part: "An act or omission that is punishable in different ways by

14

different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." With the passage of Assembly Bill 518, effective January 1, 2022, section 654, subdivision (a) now permits the court to punish the defendant "under either of such provisions" rather than "under the provision that provides for the longest potential term of imprisonment." (Stats. 2021, ch. 441 (Assem. Bill 518) § 1.)

Because Assembly Bill 518 provides the court with "new discretion to impose a lower sentence" and there is no evidence to rebut the presumption of retroactivity expressed in *In re Estrada* (1965) 63 Cal.2d 740, 744−745, Aguilar is entitled to the potentially ameliorative benefit of the amended statute. (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.) Here, the trial court exercised leniency in several respects, running all the terms concurrently because the crimes stemmed from "a single period of aberrant behavior" and selecting the lower term on the firearm enhancement. Thus, as the People concede, the record is not "sufficiently clear to render remand a meaningless exercise." (*People v. Mendoza* (2022) 74 Cal.App.5th 843, 862.) Accordingly, we remand for a full resentencing hearing where the trial court may decide whether to stay execution of the term imposed in count 2 or count 3 under section 654 as amended. (*Mani,* at pp. 380−381.)[6]

---

[6] Observing that middle terms were imposed on counts 1, 2, and 3, we requested supplemental briefing from the parties on the effect, if any, of Senate Bill No. 567 (Stats. 2021, ch. 731) on Aguilar's sentence. Effective January 1, 2022, section 1170, subdivision (b)(6) as amended generally requires the court to impose the lower term if a defendant's status as a victim of intimate partner violence "was a contributing factor in the commission of the offense." There was some discussion of Aguilar's status as a victim of intimate partner violence at sentencing, but because that fact was not

## DISPOSITION

The matter is remanded for a full resentencing hearing, where the court must decide in its discretion whether to stay the sentence imposed on count 2 or count 3 consistent with Penal Code section 654 as amended. Following resentencing, the clerk of the superior court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

DATO, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.

---

relevant to the court's sentencing decisions under then-existing law, the record was not fully developed. Because the case will be remanded for resentencing, we agree with the People that the best course is to allow the parties to address their arguments regarding the applicability of amended section 1170 to the trial court in the first instance. (See generally *People v. Buycks* (2018) 5 Cal.5th 857, 893 [describing the "full resentencing rule"].)

16